Bk 4356 Pg78 #28332
10-04-2002 @ 02:06p

## *QUITCLAIM DEED*

WE, **RELOACTION,** a California Corporation having an address of 7901 Stoneridge
Drive, Suite 90, Pleasanton, California 95488, in consideration paid of
`Three Hundred Fifteen Thousand Dollars and  00/100`       XXXXXXX
(`$ 315,000.00`        ), grants to  `Daniel J. Galvin, Individually`

WITH

## *QUITCLAIM COVENANTS*

Two parcels of land located on Walden Court in the "Holland Woods" subdivision off
Pleasant Street, Leominster, Massachusetts, identified as Lot 13A and 13B on a Plan
entitled "Plan of Land in Leominster, Mass., prepared for Daniel E. Lattanzio dated June
12, 2000, Whiteman & Bingham Associates, Inc. Registered Professional Engineers &
Land Surveyors, 510 Mechanic Street, Leominster, Massachusetts 01453", recorded with
the Worcester North Registry of Deeds in Book 412, Page 17.

Lot 13A is subject to and with the benefit of the encumbrances, easements and
declarations as set forth in deed from said Daniel E. Lattanzio from Tanco Corporation
duly recorded with Worcester North Registry of Deeds in Book 3576, Page 140.

Lot 13B is subject to and with the benefit of the encumbrances, easements and
declarations as set forth in deed to said Ernest E. Lattanzio from Carter Hill Capital
Corporation duly recorded with Worcester North Registry of Deeds in Book 03188, Page
305.

`See corporate vote recorded immediately prior hereto.`

The within conveyed premises do not constitute all or substantially all of the property of
the grantor and is made in the usual course of business.

*(left margin, handwritten, rotated)* 18 Walden Court, Leominster, MA 01453

*(right margin, vertical text)* **CERTIFICATION**
The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been prepared by undersigned with the original
and that said copy is a true complete copy thereof

*(right margin, handwritten, vertical)* Brian C. Linehan, Esq. BBo #024457

*(bottom left, handwritten signature)* Bonville & Howard



EXHIBIT
A

Bk 4356 Pg79 #28332

Being the same premises conveyed by deed recorded with the Worcester North District Registry of Deeds immediately prior hereto.

EXECUTED as a sealed instrument this __11th__ day of _September,_ 2002

Edgar Colina

STATE OF:   CALIFORNIA

COUNTY OF:   ALAMEDA

DATE:   9/11/02



    Before me personally appeared _Edgar Colina_ , to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as their fee act and deed.

Notary Public   Lori Duque
My Commission Expires   March 26, 2015

FITCHBURG
DEEDS REG 21
WORC NORTH
10/04/02 2:40PM
00000 #331 C2
FEE   $1436.40
CASH   $1436.40

ATTEST: NO. WORC. REGISTRY OF DEEDS
JOHN B. McLAUGHLIN, REGISTER

Bk 4356 Pg75 #28331
10-04-2002 @ 02:06p

## CERTIFICATE OF SECRETARY

The undersigned, being the duly elected Secretary of ReloAction, a California corporation (the **"CORPORATION"**), certifies as follows:

1.  I am the duly elected Secretary of the **CORPORATION**.

2.  Effective January 29, 1997, the Board of Directors of the **CORPORATION** duly adopted the following resolution:

    **WHEREAS**, it is in the best interest of the **CORPORATION** for the officers of the **CORPORATION** to authorize certain officers or employees of the **CORPORATION** to contract to purchase, purchase, contract to sell, sell, transfer, and convey real property of the **CORPORATION**;

| | |
|---|---|
| AKBARIAN, LINDA | GAMMON, VANESSA |
| ALBRECHT, TYLENE | GENDUSA, MARY |
| ARMSTRONG, CAROL | GETZ, MARY |
| BAUTISTA, ANNE-MARIE | GREENIDGE, GRACE |
| BERTHOLD, DANA | HALL, LYN |
| BROCK, MARTHA | HATCH, PAMELA |
| BUCCHIANERI, DENISE | LITTLEJOHN, CHERYL |
| BUSEMAN, MARY | MAKERS, KIM |
| CARLUCCI, ROBERT | MANHA, MARIE |
| COLINA, EDGAR | MARSHALL, ANGIE |
| COX, TERRY | OSBORNE, JUDITH |
| DAVIS, CONSTANCE | OWENS, MEG |
| DE HONEY, LESLEY | PATITUCCI, FRANK |
| DE MOSS, W. DONALD | ROY, VALERIE |
| DeBELLIS, JENNIFER | RUIZ, BECKY |
| DeDOMINICS, LUISA | RYAN, RICHARD |
| DICKSON, DENISE | SCHERTZER, JANIS |
| DODSON, BERT | SKOURTIS, CARA |
| DOWDY, VETA | SIMMONS, DEBBIE |
| DREBLOW, CATHY | SMITH, CINDY |
| DRURY TERRI | STAMPER, HELEN |
| ESTEY, WRAYANN | THOMANN, DAVID |
| FOSSETT, JOAN | TODD, KATHY |
| FREDERICK, RODINA | WHITESELL, HARRY |
| GALLAGHER, DOUG | WOODS, CHRIS |

CERTIFICATION

The undersigned, an attorney at law, certifies that this copy of the foregoing, furnished by undersigned has been compared by undersigned with the original and that said copy is a true complete copy thereof

Brian C. Linton, Esq. SBO #490437

**NOW, THEREFORE, BE IT RESOLVED**, that the following individuals are each authorized, acting alone or together, to contract to purchase, purchase, contract to sell, sell, transfer, and convey real property of the **CORPORATION**:

Bonville & Howard

EXHIBIT
B

Bk 4356 Pg76 #28331

**RESOLVED FURTHER,** that the term "real property of the **CORPORATION**," as used in this resolution, refers only to real property purchased or sold pursuant to a home purchase program administered under contract for a corporate client; the term does not refer to real property that is owned by the **CORPORATION** for purposes of investment or which is used in the normal course of its business;

**RESOLVED FURTHER,** that such individuals shall be further authorized to execute any and all deeds, documents and other instruments necessary to accomplish the purchase, sale, transfer, and conveyance of such real property; to receive, hold and disburse the funds; to pay and discharge the existing encumbrances; and to give receipts of any payments, which when received shall exonerate the person or persons paying such money from seeing to the application thereof;

**RESOLVED FURTHER,** that the **CORPORATION** shall declare that all receipts, deeds, matters and things which shall be given and executed by such individuals shall be good, valid and effectual for all intents and purposes whatsoever as if the same had been signed, sealed, delivered, given, made, or done by the **CORPORATION**.

Executed under penalty of perjury this 10th day of January, 2002 at Pleasanton, California.

**RON WHITMILL,** Secretary

SEAL

Bk 4356 Pg77 #28331

## CERTIFICATE OF SECRETARY

The undersigned, being the duly elected Secretary of ReloAction, a California corporation (the "Corporation"), certifies as follows:

1.  I am the duly elected Secretary of the Corporation.

2.  Effective __January 31, 2002__, the Home Sales Transaction Committee (the "Committee") acting under the authority of the Board of Directors of the Corporation duly adopted the resolutions attached as __Attachment A__.

Executed under penalty of perjury this _23rd_ day of _September_, 200 _2_ at Pleasanton, California.

_[signature]_

Ron Whitmill, Secretary

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Alameda___        } ss.

On __September 23 2002__, before me, __Lori Duque, Notary Public__,
    Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared ___Ron Whitmill___,
                              Name(s) of Signer(s)

☑ personally known to me
☐ proved to me on the basis of satisfactory evidence

_[notary seal:]_
LORI DUQUE
Commission # 1300943
Notary Public - California
Alameda County
My Comm. Expires Mar 26, 2006

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_[signature]_
Signature of Notary Public

Place Notary Seal Above

──────────── **OPTIONAL** ────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____     Number of Pages: __2__

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| | |
|---|---|
| | RIGHT THUMBPRINT OF SIGNER |
| | Top of thumb here |

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

ATTEST: NO. WORC. REGISTRY OF DEEDS
JOHN B. McLAUGHLIN, REGISTER

CERTIFICATION

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

*Brian C. Lightbody Esq. BBO #65557*

OCTOBER 4, 2002
[Date]

**REDACTED**

**NOTE**

Loan Number ████

UPLAND
[City]

CALIFORNIA
[State]

12 WALDEN COURT, LEOMINSTER, MASSACHUSETTS 01453
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 283,500.00   (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is  C & G FINANCIAL SERVICES, INC., A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

**(A)  Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   1st day of each month beginning on  DECEMBER   1      , 2002 .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on    NOVEMBER 1, 2032     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  1425 W. FOOTHILL BOULEVARD, SUITE 210, UPLAND, CALIFORNIA 91786
or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 1,933.97          .

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 1 of 3

*DocMagic eForms*
*www.*



EXHIBIT
C

fs32001.not

## 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be         3 . 000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.


*DocMagic eForms* 800-649-1362
*www.docmagic.com*





## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
DANIEL J. GALVIN                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:

       LEHMAN BROTHERS BANK, FSB

WITHOUT RECOURSE.

CRG FINANCIAL SERVICES, INC.
A CALIFORNIA CORPORATION

BY: _____
GAIL V. REMIS
R. VICE PRESIDENT

PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: _____
RALPH A. LENZI III
AUTHORIZED SIGNATORY

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB
BY: _____
JULIANNA TUCKER
VICE PRESIDENT

Bk 7024 Pg169   #15771
09-04-2009 @ 10:41a

**PREPARED BY:**
SARITHA BATTU
AURORA LOAN SERVICES, LLC
10350 PARK MEADOWS DRIVE
LITTLETON, COLORADO 80124

**REDACTED**

When recorded mail to:   MPG
Equity Loan Services, Inc.
Loss Mitigation Title Services- LMTS
1100 Superior Ave., Ste 200
Cleveland, OH 44114   5069969
Attn: National Recordings 1120

Parcel No. LEOM-396-258

_____ [Space Above This Line for Recording Data] _____

Original Recorded Date: OCTOBER 4, 2002
Original Principal Amount: $  283,500.00

Fannie Mae Loan No.:
Loan No.:
MERS MIN No.:

## LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 1ST   day of MAY, 2009
between  **DANIEL J. GALVIN, A SINGLE MAN**

("Borrower") and **AURORA LOAN SERVICES, LLC**

**AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**   ("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and
Timely Payment Rewards Rider, if any, dated **OCTOBER 4, 2002**   and recorded in
Book or Liber  4356, at page(s) 80                                             , of the  Official   Records of

**WORCESTER COUNTY, MASSACHUSETTS**                                                      (Name of Records)
      (County and State, or other jurisdiction)                    , and (2) the Note bearing the same date as, and
secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

12 WALDEN COURT, LEOMINSTER, MASSACHUSETTS 01453            **CERTIFICATION**
                     (Property Address)                        The undersigned, an attorney at law, certifies that
                                                               this copy of the foregoing, furnished by undersigned
                                                               has been compared by undersigned with the original
                                                               and that said copy is a true complete copy thereof.

                                                               Brian C. Linehan, Esq.  BBO#Co90437

LOAN MODIFICATION AGREEMENT - Single Family -  Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 01/09)      (page 1 of 5)
Modified by First American Loan Production Services
First American Real Estate Solutions LLC                                                          MASSACHUSETTS
FALPS# MAFM3179  Rev. 02-06-09

12 WALDEN COURT LEOMINSTER MASSACHUSETTS 01453


**EXHIBIT
D**

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **MAY 1, 2009**          , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $  **306,195.43**  , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of     **5.250**   %, from **MAY 1, 2009**          . Borrower promises to make monthly payments of principal and interest of U.S. $     **1,527.52**     , beginning on the **1ST**   day of **JUNE, 2009**          , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  The yearly rate of     **5.250**     % will remain in effect until principal and interest are paid in full.  If on  **MAY 01, 2049**            (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

AURORA LOAN SERVICES, LLC

*S. Merriman*

Name: Shawnda Merriman                                    6-5        (Seal)
Its: SRUP                                                            - Lender

DANIEL J. GALVIN                                                   (Seal)
                                                                   - Borrower

_____                   (Seal)
                                                                   - Borrower

_____                   (Seal)
                                                                   - Borrower

_____                   (Seal)
                                                                   - Borrower

_____                   (Seal)
                                                                   - Borrower

_____                   (Seal)
                                                                   - Borrower

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 01/09)     *(page 4 of 5)*
Modified by First American Loan Production Services                             MASSACHUSETTS
First American Real Estate Solutions LLC
FALPS# MAFM3179-4  Rev. 02-06-09

[Space Below This Line for Acknowledgments]    0014225692

STATE OF _MASSACHUSETTS_          COUNTY OF _WORCESTER_

The foregoing instrument was acknowledged before me this _18th day of MAY, 2009_ by
**DANIEL J. GALVIN, A SINGLE MAN**

Signature of Person Taking Acknowledgment _[signature]_

Printed Name _JILL A. NATOLA_

Title or Rank _Attorney At Law_

Serial Number, if any

*[Notary seal: JILL A. NATOLA / MY COMMISSION EXPIRES 04-02-2015 / COMMONWEALTH OF MASSACHUSETTS / NOTARY PUBLIC]*

### LENDER ACKNOWLEDGMENT

STATE OF _Colorado_          COUNTY OF _Douglas_

The foregoing instrument was acknowledged before me this _June 5 2009_ by
_Shawnda Merriman_ , the _SRVP_
of _Aurora Loan Services_

an _Aurora Bank      FSB_ , on behalf of said entity.

Signature of Person Taking Acknowledgment _Maria L Kirk_

Printed Name _Maria L Kirk_

Title or Rank _Notary_

Serial Number, if any

Maria L Kirk
NOTARY PUBLIC
State of Colorado

My Commission Expires April 30, 20 13

LOAN MODIFICATION AGREEMENT - Single Family -  Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 01/09)     (page 5 of 5)
Modified by First American Loan Production Services                                                              MASSACHUSETTS
First American Real Estate Solutions LLC
FALPS# MAFM3179-5  Rev. 02-06-09

EXHIBIT A

BORROWER(S):   DANIEL J. GALVIN, A SINGLE MAN

LOAN NUMBER:   0014225692

LEGAL DESCRIPTION:

TWO PARCELS OF LAND LOCATED ON WALDEN COURT IN THE "HOLLAND
WOODS" SUBDIVISION OFF PLEASANT STREET, LEOMINSTER,
MASSACHUSETTS, IDENTIFIED AS LOT 13A AND 13B ON A PLAN
ENTITLED "PLAN OF LAND IN LEOMINSTER, MASS., PREPARED FOR
DANIEL E. LATTANZIO DATED JUNE 12, 2000, WHITEMAN & BINGHAM
ASSOCIATES, INC. REGISTERED PROFESSIONAL ENGINEERS & LAND
SURVEYORS, 510 MECHANIC STREET, LEOMINSTER, MASSACHUSETTS
01453", RECORDED WITH THE WORCESTER NORTH REGISTRY OF DEEDS IN
BOOK 412, PAGE 17.


ALSO KNOWN AS:  12 WALDEN COURT, LEOMINSTER, MASSACHUSETTS 01453


GALVIN                MA
41099306
FIRST AMERICAN ELS
MODIFICATION AGREEMENT


ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

FAND# EXHIBIT.A Rev. 07-03-07

**REDACTED**

After Recording Return To:
CoreLogic SolEx
1637 NW 136th Avenue Suite G-100
Sunrise, FL 33323

This Document Prepared By:

Nationstar Mortgage LLC d/b/a Mr. Cooper
8950 CYPRESS WATERS BLVD
DALLAS, TX 75019

**CERTIFICATION**

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linfman, Esq. BBO#676457

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **October 04, 2002**
Original Loan Amount: **$283,500.00**

Loan No: ▓▓▓▓
Investor Loan No: ▓▓▓▓

Land Mortgage Document Number: **N/A**
Land Instrument Number: **N/A**
Land Book Number: **N/A**
Land Page Number: **N/A**

## LOAN MODIFICATION AGREEMENT
### (Providing For Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 12th day of January, 2018, between **DANIEL J. GALVIN** ("Borrower") and **Nationstar Mortgage LLC d/b/a Mr. Cooper**, whose address is **8950 CYPRESS WATERS BLVD, DALLAS, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **October 04, 2002** and recorded in Book/Liber **4356**, Page **80**, Instrument No: **28333** and recorded on **October 04, 2002**, of the Official Records of **WORCESTER County, MA** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**12 WALDEN COURT, LEOMINSTER, MA 01453,**
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **January 1, 2018**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$426,237.03**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.







EXHIBIT
E

2. **$127,871.11** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$298,365.92**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.000%**, from **January 1, 2018**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,246.99**, beginning on the **1st** day of **February, 2018**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.000%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **January 1, 2058**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument



shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [  ].

(g)   In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(h)   Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

7.   In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

8.   By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower



LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 4/14)
8300b 08/14                                                                                                                          (page 3 of 5)

has been advised of the amount needed to fully fund the Escrow Items.

In Witness Whereof, the Lender and I have executed this Agreement.

_____    Date: 1/24/2018

**DANIEL J. GALVIN**  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

Commonwealth of Massachusetts, _____Worcester_____ County ss :

On this 24th day of January, 2018, before me, the undersigned notary public, personally appeared **DANIEL J. GALVIN**, (document signer) proved to me through satisfactory evidence of identification, which were

_____Known_____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____
Official Signature and Seal of Notary

Official Printed Name and Seal of Notary

MARY BETH THIBODEAU
Notary Public
Massachusetts
My Commission Expires
Jan 21, 2022

My commission expires : _____




LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument     F N M A ★
8300b 08/14

Form 3179 1/01 (rev. 4/14)
(page 4 of 5)

Nationstar Mortgage LLC d/b/a Mr. Cooper

By: _____ (Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____
The State of TX
County of Dallas

Before me _____/Notary Public (name/title of officer) on this day
                              (Please Print Name)
personally appeared _____, the Assistant Secretary of Nationstar
Mortgage LLC d/b/a Mr. Cooper, known to me (or proved to me on the oath of _____ or
through _____ (description of identity card or other document)) to be the person
whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____, A.D.,_____.


                                                 _____
                                                 Signature of Officer

                                                 _____
                                                 (Printed Name of Officer)

                                                 __ Notary Public
                                                 Title of Officer
My Commission expires : _____





LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. ___)
8300b 08/14                                                                                                          *(page 5 of 5)*

## Exhibit "A"

Loan Number: **597735356**

Property Address: **12 WALDEN COURT, LEOMINSTER, MA 01453**

Legal Description:

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF WORCESTER, STATE OF MASSACHUSETTS: TWO PARCELS OF LAND LOCATED ON WALDEN COURT IN THE HOLLAND WOODS SUBDIVISION OFF PLEASANT STREET, LEOMINSTER, MASSACHUSETTS, IDENTIFIED AS LOT 13A AND 13B ON A PLAN ENTITLED, PLAN OF LAND IN LEOMINSTER, MASSACHUSETTS. PREPARED FOR DANIEL E. LATTANZIO DATED JUNE 12, 2000, WHITMAN AND BINGHAM ASSOCIATES, INC., REGISTERED PROFESSIONAL ENGINEERS AND LAND SURVEYORS, RECORDED WITH THE WORCESTER NORTH REGISTRY OF DEEDS IN BOOK 412, PAGE 17. LOT 13A IS SUBJECT TO AND WITH THE BENEFIT OF THE ENCUMBRANCES, EASEMENTS AND DECLARATIONS AS SET FORTH IN DEED FROM SAID DANIEL E. LATTANZIO FROM TANCO CORPORATION DULY RECORDED WITH WORCESTER NORTH REGISTRY OF DEEDS IN BOOK 3576, PAGE 140. LOT 13B IS SUBJECT TO AND WITH THE BENEFIT OF THE ENCUMBRANCES, EASEMENTS AND DECLARATIONS AS SET FORTH IN DEED TO SAID ERNEST E. LATTANZIO FROM CARTER HILL CAPITAL CORPORATION DULY RECORDED WITH WORCESTER NORTH REGISTRY OF DEEDS IN BOOK 03188, PAGE 305.

### Derivation Clause:

The instrument constituting the source of **DANIEL J. GALVIN**'s interest in the foregoing described Property was a Deed, from **RELOACTION, A CALIFORNIA CORPORATION**, Grantor, to **DANIEL J. GALVIN**, Grantee, recorded on 10/04/2002 at Book 4356, Page 78 under Instrument No. 28332 in the Register's Office of WORCESTER County, MA.





Bk: 56365 Pg: 376



Bk: 56365 Pg: 376
Page: 1 of 2 11/28/2016 10:19 AM  WD

After Recording Return to
VISIONET SYSTEMS INC
183 INDUSTRY DRIVE
PITTSBURGH, PA 15272

# LIMITED POWER OF ATTORNEY

## CERTIFICATION

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBO #690437



EXHIBIT
F

Bk: 5636B Pg: 377

201300008152
OLD REPUBLIC NATIONAL TITLE INS CO
530 S MAIN ST
AKRON OH

201300008152
Filed for Record in
CLARE COUNTY
PAMELA MAYFIELD
10-04-2013 At 01:53 pm.
PWR OF ATTY       14.00
OR Liber   1242 Page 309 - 309

13/01236

## LIMITED POWER OF ATTORNEY

Instrument              Liber Page
201300008152 OR       1242   309

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitutes and appoints Nationstar Mortgage, LLC, organized and existing under the laws of the state of Texas, its true and lawful Attorney-in-Fact, and in its name, place, and stead for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1. the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2. the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3. the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4. the modification or extension of a mortgage or deed of trust;

5. the subordination of the lien of a mortgage or deed of trust;

6. the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

    a. the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
    b. the issuance of a statement of breach or nonperformance;
    c. the issuance or cancellation or rescission of notices of default;
    d. the cancellation or rescission of notices of sale; and
    e. the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Federal National Mortgage Association to the Attorney-in-Fact under this Limited Power of Attorney;

7. the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8. the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of June, 2013.

Federal National Mortgage Association

By: _____
Mitchell Kucheruk, Asst. Vice President

By _____
Barbara Cushman, Assistant Secretary

STATE OF Virginia}
COUNTY OF Fairfax}

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 13th day of June, 2013 by Mitchell Kucheruk, Assistant Vice President, and Barbara Cushman, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

_____
Notary Public:
My Commission Expires:

SHANICKA SINGLETON
Notary Public - Reg. # 7023944
Commonwealth of Virginia
My Commission Expires Oct. 31, 2015

TE OF MICHIGAN} I, Pamela Mayfield, REGISTER OF
                } DEEDS OF CLARE COUNTY, do
JNTY OF CLARE} hereby certify that I have compared
.. foregoing copy of the permanent record recorded in Clare
.inty Register of Deeds Office.
.ESTIMONY WHEREOF, I have hereunto set my hand and
.xed the seal of said County this ___10th___ day of
___November___ A.D. 20 16
.ELA MAYFIELD, COUNTY CLERK
Polly Zombeck        DEPUTY CLERK

Bk 4356 Pg80 #28333
10-04-2002 @ 02:06p

After Recording Return To:
C & G FINANCIAL SERVICES, INC.
1425 W. FOOTHILL BOULEVARD, SUITE 210
UPLAND, CALIFORNIA 91786
Loan Number: CGO-4996

## CERTIFICATION

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BB02690437

Banville & Howard

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

MIN:

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated      OCTOBER    4            , 2002 ,
together with all Riders to this document.
(B)  "Borrower" is   DANIEL J. GALVIN, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 2026, tel. (888) 679-MERS.
(D)  "Lender" is  C & G FINANCIAL SERVICES, INC.

Lender is a   CORPORATION                                                                     organized
and existing under the laws of  CALIFORNIA
Lender's address is  1425 W. FOOTHILL BOULEVARD, SUITE 210, UPLAND,
CALIFORNIA 91786
(E)  "Note" means the promissory note signed by Borrower and dated     OCTOBER   4       ,2002 .
The Note states that Borrower owes Lender     TWO HUNDRED EIGHTY THREE THOUSAND FIVE HUNDRED AND
00/100              Dollars (U.S. $283,500.00      ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   NOVEMBER 1, 2032 .
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---





EXHIBIT
G4

Bk 4356 Ps81 #28333

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ 1-4 Family Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider
- ☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY of WORCESTER :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 0396-00258-00000




Bk 4356 Pg82 #28333

which currently has the address of       12 WALDEN COURT
                                                                    [Street]
·LEOMINSTER                    , Massachusetts      01453            ("Property Address"):
            [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
    1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
    2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Ma30223.mzm

D6

Bk 4356 Pg83 #28333

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS DocMagic *eRorms* 800-649-1362
Form 3022 01/01                                        Page 4 of 12                                        www.docmagic.com

Ms30224.mzm



Bk 4356 Pg84 #28333

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS *DocMagic* 800-649-1362
Form 3022 01/01                                    Page 5 of 12                                    www.docmagic.com

Ma30225.mzm

D6

Bk 4356 Pg85 #28333

restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or


D6

Bk 4356 Pg86 #28333

other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    800-649-1362
Form 3022 01/01                                   Page 7 of 12                                           www.docmagic.com

Ms30227.mzm                                        

Bk 4356 Pg87 #28333

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS *DocMagic*  800-649-1362
Form 3022 01/01                                    Page 8 of 12                                              www.docmagic.com

Ma30228.mzm


Bk 4356 Pg88 #28333

Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial




Bk 4356 Pg89 #28333

interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents,

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  *DocMagic eForms* 800-645-1362
Form 3022 01/01                                 Page 10 of 12                                    *www.docmagic.com*

Ma302210.mzm                                         𝒟6

Bk 4356 Pg90 #28333

materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS *DocMagic*  800-649-1362
Form 3022 01/01                                          Page 11 of 12                                      www.docmagic.com

Ma302211.mzm

D6

Bk 4356 Pg91 #28333

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DANIEL J. GALVIN        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

Witness:                                 Witness:
_____                  _____

Commonwealth of Massachusetts,           County ss: WORCESTER

    On this    4th    day of   October                           , 2002
before me personally appeared    DANIEL J. GALVIN

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
                                          Notary Public
    Brian F. Donovan

_____
                                          Notary Public (Printed Name)

    My commission expires:   2/26/04

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS  DocMagic eℝⅇⅽⓄⓇⅆⓈ 800-649-1362
Form 3022 01/01                          Page 12 of 12                          www.docmagic.com

Ma302212.mzm

# EXHIBIT A

Bk 4356 Ps92 #28333

Two parcels of and located on Walden Court in the "Holland Woods" subdivision off Pleasant Street, Leominster, Massachusetts, identified as Lot 13A and 13B on a Plan entitled, "Plan of Land in Leominster, Mass. Prepared for Daniel E. Lattanzio dated June 12, 2000, Whitman & Bingham Associates, Inc., Registered Professional Engineers & Land Surveyors, 510 Mechanic Street, Leominster, Massachusetts 01453", recorded with the Worcester North Registry of Deeds in Book 412, Page 17.

Lot 13A is subject to and with the benefit of the encumbrances, easements and declarations as set forth in deed from said Daniel E. Lattanzio from Tanco Corporation duly recorded with Worcester North Registry of Deeds in Book 3576, Page 140.

Lot 13B is subject to and with the benefit of the encumbrances, easements and declarations as set forth in deed to said Ernest E. Lattanzio from Carter Hill Capital Corporation duly recorded with Worcester North Registry of Deeds in Book 03188, Page 305.

Being the same premises conveyed to Daniel J. Galvin by deed of ReloAction dated September 11, 2002, and recorded herewith in Book 4536 , Page 78 .

certified to be a true and exact
of the signed original

DG

ATTEST: NO. WORC. REGISTRY OF DEEDS
JOHN B. McLAUGHLIN, REGISTER

WHEN RECORDED MAIL TO:

C & G FINANCIAL SERVICES, INC.
1425 W. FOOTHILL BOULEVARD, SUITE
210
UPLAND, CALIFORNIA 91786
ATTN: QUALITY CONTROL

Bk 4891 Pg175 #31798
08-13-2003 @ 09:24a

**REDACTED**

Loan Number: ▓▓▓▓▓▓▓▓
Servicing Number:

[Space Above This Line For Recording Data]

## Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to LEHMAN BROTHERS BANK, FSB, 2530 SOUTH PARKER ROAD, SUITE 600, AURORA, COLORADO 80014

all beneficial interest under that certain Mortgage dated OCTOBER 4, 2002

DANIEL J. GALVIN, A SINGLE MAN                                              executed by

and recorded as Instrument No.28333          concurrently herewith on 10-4-02                    , Mortgagor
page 80                    , of Official Records in the County Recorder's office of WORCESTER      In book 4356
MASSACHUSETTS                                                                        County,
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A". , describing land therein as

Commonly known as: 12 WALDEN COURT, LEOMINSTER, MASSACHUSETTS 01453

Assessor's Parcel #: 0396-00258-00000
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Mortgage. C & G FINANCIAL SERVICES, INC., A
CALIFORNIA CORPORATION

By: _____            By: _____

Name: _____            Name: GAIL V. REMIS

Title: _____            Title: SR. VICE PRESIDENT

Attest                                          Attest

STATE OF ~~MASSACHUSETTS~~ CALIFORNIA                    **CERTIFICATION**

COUNTY OF ~~WORCESTER~~ SAN BERNARDINO        The undersigned, an attorney at law, certifies that
On 7-11-03                    before me,       this copy of the foregoing, furnished by undersigned,
BRENDA RIVERA                                  has been compared by undersigned with the original,
                                               and that said copy is a true complete copy thereof.
personally appeared

        GAIL V. REMIS                          Brian C. Linden, Esq. 6150                    

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)       (This area for Corporate Seal)
on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument
WITNESS my hand and official seal.

Signature _____      

        BRENDA RIVERA
        Name (Typed or Printed)                (This area for official notarial seal)
        Notary Public in for said State



Bk 4891 P9176 #31798

## EXHIBIT A

Two parcels of and located on Walden Court in the "Holland Woods" subdivision off Pleasant Street, Leominster, Massachusetts, identified as Lot 13A and 13B on a Plan entitled, "Plan of Land in Leominster, Mass. Prepared for Daniel E. Lattanzio dated June 12, 2000, Whitman & Bingham Associates, Inc., Registered Professional Engineers & Land Surveyors, 510 Mechanic Street, Leominster, Massachusetts 01453", recorded with the Worcester North Registry of Deeds in Book 412, Page 17.

Lot 13A is subject to and with the benefit of the encumbrances, easements and declarations as set forth in deed from said Daniel E. Lattanzio from Tanco Corporation duly recorded with Worcester North Registry of Deeds in Book 3576, Page 140.

Lot 13B is subject to and with the benefit of the encumbrances, easements and declarations as set forth in deed to said Ernest E. Lattanzio from Carter Hill Capital Corporation duly recorded with Worcester North Registry of Deeds in Book 03188, Page 305.

Being the same premises conveyed to Daniel J. Galvin by deed of ReloAction dated September 11, 2001, and recorded herewith in Book 4356 , Page 90 .

certified to be a true and exact
of the signed original

DG

ATTEST: NO. WORC. REGISTRY OF DEEDS
JOHN B. McLAUGHLIN, REGISTER

Bk 601 Pg 3032
02-08-2006 @ 12:08p

**REDACTED**

### CORPORATE ASSIGNMENT OF MORTGAGE

Worcester South, Massachusetts
SELLER'S SERVICING #: ████████ "GALVIN"
INVESTOR'S LOAN #: ████

MERS #: ████████  VRU #: 1 (888) 679-6377

Property Address:
12 WALDEN COURT, LEOMINSTER, 01453

Date of Assignment: January 27th, 2006
Assignor: LEHMAN BROTHERS BANK, FSB at 601 FIFTH AVENUE, P.O. BOX 4000, SCOTTSBLUFF, NE 69361
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC A DELAWARE CORPORATION at 1595 SPRING HILL RD, SUITE 310, VIENNA, VA 22182

Executed By: DANIEL J GALVIN , A SINGLE MAN  To: C & G FINANCIAL SERVICES, INC., A CALIFORNIA CORPORATION
Date of Mortgage: 10/04/2002 Recorded: 10/04/2002 in Book/Reel/Liber: 4356 Page/Folio: 80 as Instrument No.: 28333 In Worcester South, Massachusetts

Property Address: 12 WALDEN COURT, LEOMINSTER, MA 01453

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $283,500.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

LEHMAN BROTHERS BANK, FSB
On January 27th, 2006

By: _____
Krista Gingrich, Assistant Vice-President

**CERTIFICATION**

The undersigned, an attorney at law, certifies that this copy of the foregoing, furnished by undersigned has been compared by undersigned with the original and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. - BB-B690437

*KCN*KCNALS|*01/27/2006 02:38:00 PM* ALSI04ALSIA0000000000000000249810* MAWORC2* 0014225692 MASTATE_MORT_ASSIGN_ASSN *KCNALSI*

Recording Requested By:
KATRINA NAGEL
When Recorded Return To:
KATRINA NAGEL
AURORA LOAN SERVICES INC.
601 5TH AVE
SCOTTSBLUFF, NE 69361-

EXHIBIT
I

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON January 27th, 2006, before me, KATRINA C. NAGEL, a Notary Public in and for the County of
Scotts Bluff County, State of Nebraska, personally appeared Krista Gingrich, Assistant Vice-President,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

KATRINA C. NAGEL
Notary Expires: 08/10/2007

> GENERAL NOTARY - State of Nebraska
> KATRINA C. NAGEL
> My Comm. Exp. Aug. 10, 2007

(This area for notarial seal)

*KCN*KCNALSI*01/27/2006 02:38:00 PM* ALSI04ALSIA00000000000000000249810* MAWORC2* 0014225692 MASTATE_MORT_ASSIGN_ASSN **KCNALSI*

**REDACTED**

Total Pages: ( 2 )

Bk 6801 Ps248   $16157
09-25-2008 @ 09:53a

Property Address:
12 WALDEN COURT, LEOMINSTER,
MA, 01453

## CORPORATE ASSIGNMENT OF MORTGAGE

Worcester North, Massachusetts
SELLER'S SERVICING # ▓▓▓▓▓ "GALVIN"

MERS #: ▓▓▓▓▓         VRU #: 1-888-679-6377

Date of Assignment: August 25th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at P.O. BOX 2026, G4318
MILLER ROAD, FLINT, MI 48501-2026
Assignee: C & G FINANCIAL SERVICES, INC. at 1425 W FOOTHILL BLVD, SITE 210, UPLAND,
CA 91786

Executed By: DANIEL J. GALVIN, A SINGLE MAN  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR C & G FINANCIAL SERVICES, INC. IT'S
SUCCESSORS AND ASSIGNS
Date of Mortgage: 10/04/2002 Recorded: 10/04/2002 in Book/Reel/Liber: 4356 Page/Folio: 80 as
Instrument No.: 28333 In Worcester North, Massachusetts

Property Address: 12 WALDEN COURT, LEOMINSTER, MA 01453

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said
Note having an original principal sum of $283,500.00 with interest, secured thereby, together with all
moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants
and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said
Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.         **CERTIFICATION**
On August 25th, 2008   But effective 10/15/2002   The undersigned, an attorney at law, certifies that
                                                    this copy of the foregoing, furnished by undersigned
                                                    has been compared by undersigned with the original
By: _JoAnn Rein_                                    that said copy is a true complete copy thereof
JOANN REIN, Vice-President

                                      Brian C. Linehan, Esq. BBO# 69045

"SFLTSFLALEI*09/25/2008 09:28:48 AM* ALSR1ALEA0000000000000000500091* MAXWORZ4* 0014233692 MASTATE_MORT_ASSIGN_AESN **SFLALEI*

Recording Requested By:
AURORA LOAN SERVICES
When Recorded Return To:
Susan Lindhorst
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

_Harmon_



EXHIBIT
J

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON August 25th, 2008, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts
Bluff County, State of Nebraska, personally appeared JOANN REIN, Vice-President, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Darline Dietz*
DARLINE DIETZ
Notary Expires: 03/22/2010

GENERAL NOTARY-State of Nebraska
DARLINE DIETZ
My Comm. Exp. March 22, 2010

(This area for notarial seal)

ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

*SFL*SFLALS/*08/26/2006 09:28:46 AM* ALSI01ALSIA0000000000000000509281* MAWORDE* 0014225692 MASTATE_MORT_ASSIGN_ASSN *SFLALSI*

**REDACTED**

Total Pages: ( 2 )

Bk 6801 Pg250 #16158
09-25-2008 a 09:53a

710-2119

*Property Address:*
*12 WALDEN CT, LEOMINSTER, MA, 01453*

9C

### CORPORATE ASSIGNMENT OF MORTGAGE

Worcester North, Massachusetts
SELLER'S SERVICING ████████ "GALVIN"

MERS #█████████ VRU #: 1-888-679-6377

Date of Assignment: August 25th, 2008
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at P.O. BOX 2026, G4318
MILLER ROAD, FLINT, MI 48501-2026
Assignee: AURORA LOAN SERVICES, LLC at 2617 COLLEGE PARK, PO BOX 1706,
SCOTTSBLUFF, NE 69361

Executed By: DANIEL J. GALVIN, A SINGLE MAN To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR C & G FINANCIAL SERVICES, INC. IT'S
SUCCESSORS AND ASSIGNS
Date of Mortgage: 10/04/2002 Recorded: 10/04/2002 in Book/Reel/Liber: 4356 Page/Folio: 80 as
Instrument No.: 28333 In Worcester North, Massachusetts

Property Address: 12 WALDEN CT, LEOMINSTER, MA 01453

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said
Note having an original principal sum of $283,500.00 with interest, secured thereby, together with all
moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants
and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said
Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On August 25th, 2008   But effective 2/18/2006

By: ████████
JOANN REIN, Vice-President

**CERTIFICATION**

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
████ been compared by undersigned with the original
████ that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBO #690497

"DID DDALSI/09/25/2008 09:26:43 AM" ALSI01ALSIA0000000000000000432984" MAWDRES" 0014225693 MASTATE_MORT_ASSIGN_ABEN "SFIALSI"

Recording Requested By:
AURORA LOAN SERVICES
When Recorded Return To:
Susan Lindhorst
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

Harmon


EXHIBIT
K

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON August 25th, 2008, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts Bluff County, State of Nebraska, personally appeared JOANN REIN, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Darline Dietz*
DARLINE DIETZ
Notary Expires: 03/22/2010

GENERAL NOTARY-State of Nebraska
DARLINE DIETZ
My Comm. Exp. March 22, 2010

(This area for notarial seal)

ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

"DJ"DD/MLS/"08/25/2008 09:29:43 AM* ALEG1ALEW20000000X00000043295A* MAWORCE* 0014225692 MASTATE_MORT_ASSIGN, ASSM **E31 AI IN*

Bk 7005 Pg60    $13875
08-05-2009 @ 11:13a

# REDACTED

**Property Address:**
12 WALDEN COURT, LEOMINSTER, MA 01453

## CORPORATE ASSIGNMENT OF MORTGAGE

Worcester North, Massachusetts
SELLER'S SERVICING # ▓▓▓▓▓▓ "GALVIN"

MERS #: ▓▓▓▓▓▓   VRU #: 1-888-679-6377

Date of Assignment: July 24th, 2009
Assignor: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 3300 S.W. 34TH AVENUE, SUITE 101, OCALA, FL 34474

Executed By: DANIEL J. GALVIN, A SINGLE MAN  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR C & C FINANCIAL SERVICES, INC.
Date of Mortgage: 10/04/2002 Recorded: 10/04/2002 in Book/Reel/Liber: 4356 Page/Folio: 80 as Instrument No.: 28333 In Worcester North, Massachusetts

Property Address: 12 WALDEN COURT, LEOMINSTER, MA 01453

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $283,500.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

AURORA LOAN SERVICES LLC
On July 24th, 2009

By *Nancy L Walker*
NANCY L. WALKER, Assistant
Vice-President

[SEAL: AURORA LOAN SERVICES CORPORATE SEAL CENTRAL]

### CERTIFICATION

The undersigned, an attorney at law, certifies that this copy of the foregoing, furnished by undersigned has been compared by undersigned with the original and that said copy is a true complete copy thereof.

*Brian C. Linehan*, Esq. BBo #690437

"DAD"DADALSI*07/24/2009 08:26:59 AM* ALSI01ALSIA0000000300000000584445* MAWORCE* 0014225692 MASTATE_MORT_ASSIGN_ASSN **DADALSI*

Recording Requested By:
AURORA LOAN SERVICES
When Recorded Return To:
ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706



EXHIBIT
L

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON July 24th, 2009, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts Bluff County, State of Nebraska, personally appeared NANCY L. WALKER, Assistant Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Darline Dietz* (signature)



DARLINE DIETZ
Notary Expires: 03/22/2010

(This area for notarial seal)

"DAD"DADALSI*07/24/2009 08:26:59 AM* ALSI01ALSIA0000000000000000584445* MAWORCE* 0014225692 MASTATE_MORT_ASSIGN_ASSN **DADALSI*

ATTEST: NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

Bk 7444 Ps193   #10729
07-25-2011 @ 12:56p

**REDACTED**

Property Address:
12 WALDEN CT, LEOMINSTER, MA.
01453

## CORPORATE ASSIGNMENT OF MORTGAGE

Worcester North, Massachusetts

SELLER'S SERVICING #          ALVIN"

MERS #:          SIS #: 1-888-679-6377

Date of Assignment: June 22nd, 2011

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834

Assignee: AURORA LOAN SERVICES, LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69361

Executed By: DANIEL J. GALVIN, A SINGLE MAN  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR C & G FINANCIAL SERVICES, INC. IT'S SUCCESSORS AND ASSIGNS

Date of Mortgage: 10/04/2002 Recorded: 10/04/2002 in Book/Reel/Liber: 4356 Page/Folio: 80 as Instrument No.: 28333 In the County of Worcester North, State of Massachusetts.

Property Address: 12 WALDEN CT, LEOMINSTER, MA 01453

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of  with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On June 22nd, 2011

By: _____
LUCY A. LANG, Vice-President



"DO*ODALSI*06/22/2011 08:46:25 AM" ALSI01ALSIA0000000000000000433984* MAWORCE* 0014225692 MLSTATE_MORT_ASSIGN_ASSN*H_LEALSI"

Recording Requested By:
AURORA LOAN SERVICES
When Recorded Return To:
Lawrence Leseberg
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

## CERTIFICATION

The undersigned, an attorney at law, certifies that this copy of the foregoing, furnished by undersigned has been compared by undersigned with the original and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBO# 690 437

**EXHIBIT**
**M**

tabbies



After Recording Return To:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Steve Safavi

CERTIFICATION

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBO #690457

_____ [Space Above This Line For Recording Data] _____

Loan No: ▮▮▮▮▮

Original Loan Amount: $283,500.00

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this  day of , between **DANIEL GALVIN** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, _____ and recorded in _____, of the **Official Records (Name of Records)** of _____ County, MA (County and State, or other Jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**12 WALDEN CT, LEOMINSTER, MA 01453,**
(Property Address)
the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **November 1, 2012**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$319,006.11**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.625%**, from **November 1, 2012**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,459.87**, beginning on the **1st** day of **December, 2012**, and continuing thereafter on the

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300 06/12

Form 3179 1/01 (rev. 06/12)
*(page 1 of 5)*


EXHIBIT
N

same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.625%** will remain in effect until principal and interest are paid in full. If on **November 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and

none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6.     By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)

**DANIEL GALVIN**  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

Commonwealth of Massachusetts, _____ *WORCESTER* _____ County ss :

On this *26th* day of ___ *OCTOBER* ___, 20 *12*, before me, the undersigned notary public, personally appeared ___ *DANIEL  GALVIN* _____
_____,

(document signer) proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____

Official Signature and Seal of Notary

JILL A. NATOLA
MY COMMISSION EXPIRES
04-02-2015
COMMONWEALTH OF
MASSACHUSETTS
NOTARY PUBLIC

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300 06/12

Form 3179 1/01 (rev. 06/12)
*(page 4 of 5)*

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal)
                                                                                              - Lender

Name: _Nathan Broughly_
Title: _Representative_

_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of _Texas_ , _Dallas_ County ss :

On this _31_ day of _Oct_ , 20_12_, before me, the undersigned notary public, personally
appeared _Nathan Broughly_ the _Representative_ of
_Nationstar Mortgage_ ,
(document signer) proved to me through satisfactory evidence of identification, which were
_____, to be the person whose name is signed on
the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its
stated purpose.

_____
Official Signature and Seal of Notary

> CATHLEEN PHUONG NGUYEN
> Notary Public, State of Texas
> My Commission Expires
> June 01, 2016

Bk 8462 Pg152   #20189
12-08-2015 @ 12:58p

**REDACTED**

## CORPORATE ASSIGNMENT OF MORTGAGE

Worcester North, Massachusetts
**SELLER'S SERVICING #** ▮▮▮▮▮▮▮ "GALVIN"

**MIN #:** ▮▮▮▮▮▮▮▮ **SIS #: 1-888-679-6377**

Date of Assignment: November 2nd, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE
CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI 48501
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX
75019

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a mailing address at P.O. BOX
2026, FLINT, MI 48501-2026

Executed By: DANIEL J. GALVIN, A SINGLE MAN  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR  C & G FINANCIAL SERVICES, INC.
Date of Mortgage:  10/04/2002 Recorded:  10/04/2002  In Book/Reel/Liber: 4356 Page/Folio: 80 as
Instrument No.: 28333  In the County of Worcester North, State of Massachusetts.

Property Address: 12 WALDEN COURT, LEOMINSTER, MA  01453

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $283,500.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. A DELAWARE CORPORATION,
ITS SUCCESSORS AND/OR ASSIGNS
On November 2nd, 2015

By: ▮▮▮▮▮▮▮▮▮▮
VALENCIA METCALF,
Assistant Secretary

**CERTIFICATION**

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBO # 640437

*Property Address:*
*12 WALDEN COURT*
*LEOMINSTER, MA 01453*

*MB2*MB2NATT*1 1/02/2015 11:34:15 AM* NATT01NATTA000000000000162237* MAWORCE* 0597735356 MASTATE_MORT_ASSIGN_ASSN *BHENATT*

Recording Requested By:
Nationstar Mortgage
When Recorded Return To:
DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019



**EXHIBIT**

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Texas
COUNTY OF Denton

On November 2nd, 2015, before me, DARLA D. DUNCAN, a Notary Public in and for Denton in the
State of Texas, personally appeared VALENCIA METCALF, Assistant Secretary, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

DARLA D. DUNCAN
Notary Expires: 07/25/2019

(This area for notarial seal)

DARLA D. DUNCAN
Notary Public, State of Texas
My Commission Expires
July 25, 2019

ATTEST NO. WORC. REGISTRY OF DEEDS
KATHLEEN REYNOLDS DAIGNEAULT, REGISTER

*MB2*MB2NATT*11/02/2015 11:34:15 AM* NATT01NATTA0000000000000162237* MAWORCE* 0597735356 MASTATE_MORT_ASSIGN_ASSN **BHENATT*

Alex Padilla
California Secretary of State

 Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, February 5, 2018. Please refer to document Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C1721124   C & G FINANCIAL SERVICES, INC.

| | |
|---|---|
| Registration Date: | 03/03/1993 |
| Jurisdiction: | CALIFORNIA |
| Entity Type: | DOMESTIC STOCK |
| Status: | SOS/FTB SUSPENDED |
| Agent for Service of Process: | CARLOS J REMIS |
| | 1425 W FOOTHILL BLVD STE 210 |
| | UPLAND CA 91786 |
| Entity Address: | 1425 W FOOTHILL BLVD STE 210 |
| | UPLAND CA 91786 |
| Entity Mailing Address: | 1425 W FOOTHILL BLVD STE 210 |
| | UPLAND CA 91786 |

| Document Type | File Date | PDF |
|---|---|---|
| SI-NO CHANGE | 01/10/2007 | |
| SI-COMPLETE | 02/11/1998 | Image unavailable. Please request paper copy. |
| REGISTRATION | 03/03/1993 | Image unavailable. Please request paper copy. |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- If the image is not available online, for information on ordering a copy refer to Information Requests.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Frequently Asked Questions.

**Modify Search**    **New Search**    **Back to Search Results**





**William Francis Galvin**
Secretary of the Commonwealth of Massachusetts



# Corporations Division

## Business Entity Summary

ID Number: **000872606**

| Request certificate | New search |
|---|---|

Summary for: **C & G FINANCIAL SERVICES, INC.**

| | |
|---|---|
| **The exact name of the Foreign Corporation:**  C & G FINANCIAL SERVICES, INC. | |
| **Entity type:**  Foreign Corporation | |
| **Identification Number:** 000872606 | **Old ID Number:** |
| **Date of Registration in Massachusetts:** 07-20-2004 | |
| **Date of Involuntary Revocation:**  06-18-2012 | **Last date certain:** |
| **Organized under the laws of: State:** CA **Country:** USA **on:** 03-03-1993 | |
| **Current Fiscal Month/Day:** 12/31 | |
| **The location of the Principal Office:** | |
| Address:  1425 W. FOOTHILL BLVD., #210 | |
| City or town, State, Zip code, Country:          UPLAND,   CA   91786   USA | |
| **The location of the Massachusetts office, if any:** | |
| Address:  225 FRANKLIN ST. 26TH FLOOR | |
| City or town, State, Zip code, Country:          BOSTON,   MA   02110   USA | |
| **The name and address of the Registered Agent:** | |
| Name: | |
| Address: | |
| City or town, State, Zip code, Country: | |

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | CARLOS J. REMIS | 1425 W. FOOTHILL BLVD., #210 UPLAND, CA 91786 USA |
| TREASURER | GAIL V. REMIS | 1425 W. FOOTHILL BLVD., #210 UPLAND, CA 91786 USA |
| SECRETARY | GAIL V. REMIS | 1425 W. FOOTHILL BLVD., #21( CA 91786 USA |

**EXHIBIT**
**Q**

| VICE PRESIDENT | MICHAEL D. HAYES | 1425 W. FOOTHILL BLVD. #210 UPLAND, CA 91786 USA |
|---|---|---|
| DIRECTOR | GAIL V. REMIS | 1425 W. FOOTHILL BLVD., #210 UPLAND, CA 91786 USA |
| DIRECTOR | CARLOS J. REMIS | 1425 W. FOOTHILL BLVD., #210 UPLAND, CA 91786 USA |

**Business entity stock is publicly traded:**

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| Class of Stock | Par value per share | Total Authorized | | Total issued and outstanding |
|---|---|---|---|---|
| | | No. of shares | Total par value | No. of shares |
| CNP | $ 0.00 | 10,000 | $ 0.00 | 10,000 |

| | Consent | Confidential Data | Merger Allowed | Manufacturing |
|---|---|---|---|---|

**View filings for this business entity:**

```
ALL FILINGS
Amended Foreign Corporations Certificate
Annual Report
Annual Report - Professional
Application for Reinstatement
```

[ View filings ]

**Comments or notes associated with this business entity:**

[ New search ]



01/30/2017

Doonan, Graves & Longoria, LLC
100 Cummings Center
Suite 225D
Beverly, MA 01915

Borrower/Property:  DANIEL GALVIN
                    12 WALDEN CT
                    LEOMINSTER, MA 01453

Loan Number: ▓▓▓▓▓▓



CERTIFICATION

The undersigned, an attorney at law, certifies that
this copy of the foregoing, furnished by undersigned
has been compared by undersigned with the original
and that said copy is a true complete copy thereof

Brian C. Linehan, Esq. BBo#690437

As requested, the following documents/files are enclosed and are being provided to you for use in the foreclosure and/or bankruptcy proceedings relating to the above-referenced Borrower/Property

   Collateral File containing:
   - Assignment (Recorded Original) x7
   - Modification (Original) x2
   - Note (Original)
   - Security Instrument (Recorded)
   - Title Policy (Original)

**IMMEDIATELY** upon receipt of this letter and the enclosed documents/files, you are required to sign and date this acknowledgement and agreement letter and upload it to the LPS Desktop or mail it to our office.  If you fax or scan the signed letter, you must contact the NSM processor for instructions for where to send it.  You agree that Nationstar Mortgage LLC (NSM) may enforce the faxed/scanned copy of this signed letter against you.

NSM is required by Investors to track the location of all original documents.  As soon as you no longer need to have possession of the enclosed documents/files, you are instructed to return them to NSM at the following address:

   Iron Mountain-NSMTG
   4117 Pinnacle Point Dr
   Suite 100
   Dallas, TX 75211

You acknowledge and agree that all of the enclosed documents are being provided to you and are to be held by you, as agent for and Bailee of, and subject to the direction of, Nationstar Mortgage LLC.  You agree: (a) to hold and retain possession of, and to use, the enclosed documents in trust for the benefit of Nationstar Mortgage LLC and solely for the purposes of foreclosure and/or bankruptcy proceedings regarding the above-referenced Borrower and Property; (b) to comply promptly and faithfully with all directions or instructions to you from Nationstar Mortgage LLC regarding the enclosed documents; (c) that you will not cause or knowingly permit the enclosed documents/files to

EXHIBIT
R



or encumbered by, any claim, liens, security interest, charges, writs of attachment or other impositions; (d) that you will not assert or seek to assert any claims or rights of setoff to or against the enclosed documents or any proceeds thereof; (e) that the enclosed documents/files and any proceeds thereof, including any proceeds of proceeds, coming into your possession, custody or control will at all times be earmarked for the account of Nationstar Mortgage LLC; and (f) that you will keep the enclosed documents/files and any proceeds thereof separate and distinct from all other property in your possession, custody or control.

You also agree to indemnify and hold harmless Nationstar Mortgage LLC and its affiliates against and from any losses, damages, costs or expenses, including reasonable attorneys' fees, that are suffered or incurred by Nationstar Mortgage LLC or its affiliates as a result of (a) any breach by you of the terms of this acknowledgement and agreement letter and/or (b) any loss or destruction of, or any damage or unauthorized (by Nationstar Mortgage LLC) alteration to, any of the enclosed documents/files while they are in your possession or custody or are under your control.

Thank you for your cooperation.

Nationstar Mortgage LLC
Document Control Department

**BY MY SIGNATURE BELOW, I ACKNOWLEDGE RECEIPT OF THE DOCUMENTS/FILES LISTED ABOVE AND AGREE TO THE TERMS OF THIS LETTER AND FURTHER STATE THAT I AM AUTHORIZED TO SIGN THIS LETTER AND AGREE ON BEHALF OF THE RECIPIENT FIRM.**

Doonan, Graves & Longoria, LLC

By: _K. Michel_                          Print Name: _Kristin Michel_

Title: _Operations Mgr_              Date: _2/1/17_

**UPON RECEIPT YOU MUST RETURN BOTH PAGES OF THE SIGNED COPY OF THIS LETTER BY UPLOAD TO LPS DESKTOP OR MAILING TO NATIONSTAR MORTGAGE LLC, 4117 PINNACLE POINT DR, SUITE 100, DALLAS, TX 75211.**