UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER,<br><br>        Plaintiff,<br><br>        v.<br><br>DANIEL GALVIN,<br><br>        Defendant. | CIVIL ACTION<br><br>NO. 4:17-cv-40123-DHH |

## ORDER

**August 10, 2018**

Hennessy, M.J.

Plaintiff Nationstar Mortgage LLC ("Nationstar"), doing business as Mr. Cooper, filed this action to quiet title in and foreclose upon a parcel of real estate owned by pro se Defendant Daniel Galvin ("Galvin"). The parcel is located at 12 Walden Court, Leominster, Massachusetts (the "property"). The parties have consented to my jurisdiction over the case. Docket #10.

Now before me is Nationstar's motion for summary judgment. Docket #13. Galvin has not opposed Nationstar's motion. Cf. docket #12 (instructing Galvin to oppose the motion by March 2, 2018, if he wished to do so). The parties argued the motion at a hearing held June 1, 2018.

For the reasons that follow, the motion for summary judgment is DENIED WITHOUT PREJUDICE. I further ORDER that Count I is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

1

I.  BACKGROUND

   A.  Factual Background

Unless otherwise noted, the following facts in the summary judgment record are not in dispute.

In September 2002, Galvin acquired the property from ReloAction, a California corporation, by means of a quitclaim deed. Docket #1-1 at 1-2. Galvin paid ReloAction $315,000 for the property. Id. at 1. The quitclaim deed is signed on ReloAction's behalf by someone named Edgar Colina. Id. at 2. Colina's title or relationship to ReloAction is not listed on the deed. See id. However, a corporate certificate from ReloAction, appended to Nationstar's complaint, granted Colina authority to "contract to sell, sell, transfer, and convey real property" on ReloAction's behalf. Id. at 3. The corporate certificate further states that all deeds executed by Colina "shall be good, valid and effectual for all intents and purposes whatsoever as if the same had been signed, sealed, delivered, given, made or done by [ReloAction]." See id. at 3-4. The quitclaim deed and the corporate certificate were recorded simultaneously in the Worcester County Registry of Deeds. Compare id. at 3-5 (corporate certificate recorded at book 4356, pages 75-77, on October 4, 2002 at 2:06pm) with id. at 1-2 (quitclaim deed recorded at book 4356, pages 78-79, at the same date and time).

To pay for the property, Galvin executed and delivered a promissory note in the amount of $283,500 in favor of a California corporation called C&G Financial Services, Inc. ("C&G"). See id. at 6-9. According to Nationstar, C&G is defunct. Appended to Nationstar's complaint are two documents suggesting that C&G may no longer operate. The first is C&G's listing in the California Secretary of State's online database of business entities. That database lists C&G's

status as "SOS/FTB SUSPENDED."[1] Docket #1-1 at 63. The second is a similar listing in the online database of the Secretary of the Commonwealth of Massachusetts, which says C&G's corporate registration in Massachusetts was involuntarily revoked on June 18, 2012. See id. at 64-65. Nationstar also has submitted C&G's listing in an Indiana state database, which says C&G's status is "[r]evoked," and describes C&G as "[i]nactive" as of August 28, 2009. See docket #23 at 12-15.

Galvin's promissory note was secured by a mortgage on the property. See docket #1-1 at 10-22. The mortgage identifies Galvin as the borrower and mortgagor; C&G as the lender; and Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee, "acting solely as a nominee for [the] Lender and [the] Lender's successors and assigns." See id. at 10.

The two instruments at the center of this case are Galvin's promissory note and Galvin's mortgage. Both documents have been transferred several times over the years. I now summarize those transfers.

1.  The Promissory Note

I begin with the promissory note. First, C&G endorsed the note to Lehman Brothers Bank, fsb ("Lehman Brothers Bank"). See id. at 9. Lehman Brothers Bank then endorsed the note to Lehman Brothers Holdings Inc. ("Lehman Brothers Holdings"). See id. In turn, Lehman Brothers Holdings endorsed the note in blank. See id. ("Pay to the order of ___ without recourse."). The effect of this endorsement in blank is that the promissory note is owned by whoever possesses the note. See, e.g., Courtney v. U.S. Bank, N.A., 922 F. Supp. 2d 171, 174 (D. Mass. 2013) (citing Mass Gen. Laws ch. 106, § 3-301) ("[W]hen a note is endorsed in blank,

---

[1] The meaning of "SOS/FTB" is unclear.

it may be enforced by proof of possession alone."). Nationstar now possesses Galvin's note. See docket #1-1 at 6-9.

Nationstar represents that it is a loan servicer and authorized agent of the Federal Mortgage Association, commonly known as "Fannie Mae," and that Nationstar is prosecuting this action on Fannie Mae's behalf. Docket #1 ¶ 21. The record contains a limited power of attorney authorizing Nationstar to act on Fannie Mae's behalf for purposes including mortgage modifications and foreclosures. See docket #15-1 at 23. Nationstar also has submitted an affidavit of Erich Ludwig, a Fannie Mae employee whose title is listed as "AVP," which presumably means Assistant Vice President, averring that Nationstar is servicing Galvin's mortgage on Fannie Mae's behalf, and "is duly authorized to commence and prosecute the instant action in its own name."[2] See docket #18 at 1-3.

2. The Mortgage

The history of Galvin's mortgage is more complicated. The mortgage is dated October 4, 2002. Docket #1-1 at 10. As noted above, it names Galvin as the borrower, C&G as the lender, and MERS as the mortgagee. See id. The mortgage has been the subject of numerous assignments, most of which, according to Nationstar, are invalid. I proceed chronologically.

On July 11, 2003, C&G purported to assign the mortgage to Lehman Brothers Bank. See id. at 23-24. According to Nationstar, this assignment was invalid because only the mortgagee, i.e., MERS, had the power to assign the mortgage. Thus, according to Nationstar, this assignment had no legal effect, and MERS remained the mortgagee of record.

---

[2] This arrangement between Fannie Mae and Nationstar is not uncommon. "Fannie Mae often requires servicers to initiate legal proceedings in the servicer's name if the servicer or MERS is the mortgagee of record. After the servicer forecloses, Fannie Mae generally requires the servicer to convey title of the property to it. Therefore, . . . Fannie Mae's agent[] has the right both to collect on the debt and to foreclose on the mortgage." Kiah v. Aurora Loan Servs., LLC, No. 10-cv-40161-FDS, 2011 WL 841282, at *5 (D. Mass. Mar. 4, 2011) (citations omitted).

On January 27, 2006, Lehman Brothers Bank, believing it had properly obtained the mortgage from C&G, purported to assign the mortgage to MERS. See id. at 25-26. Nationstar argues this assignment was invalid because Lehman Brothers Bank had no interest in the mortgage to assign: the prior assignment from C&G, through which Lehman Brothers Bank purported to obtain the mortgage, was invalid. Thus, according to Nationstar, MERS remained the mortgagee of record.

On August 25, 2008, MERS assigned the mortgage to C&G. See id. at 27-28. This assignment was recorded in the Worcester County Registry of Deeds at book 6801, pages 248-49. Id. MERS attempted to backdate this assignment so that it would take retroactive effect as of October 15, 2002.[3] See id. at 27. According to Nationstar, this assignment was valid, because MERS was the mortgagee of record and so could assign the mortgage. However, Nationstar argues that Massachusetts law forbids retroactive mortgage assignments, which Nationstar says are effective only as of the date of execution. Thus, according to Nationstar, C&G obtained the mortgage from MERS and became the mortgagee of record as of the day of the assignment—August 25, 2008.

That same day, August 25, 2008, MERS also purported to assign the mortgage to Aurora Loan Services, LLC ("Aurora"). See id. at 29-30. This assignment was recorded in the Worcester County Registry of Deeds at book 6801, pages 250-51, i.e., immediately after MERS's assignment to C&G. See id. MERS attempted to backdate this assignment so that it would take retroactive effect as of February 18, 2006. See id. at 29. According to Nationstar, this assignment was invalid because MERS already had assigned the mortgage to C&G through

---

[3] Presumably, MERS attempted to backdate this assignment in order to cure the defects in the July 11, 2003 and January 27, 2006 assignments, which were invalid because C&G was not the mortgagee of record as of July 11, 2003.

5

its assignment recorded earlier the same day, leaving MERS with nothing left to assign. Thus, according to Nationstar, C&G remained the mortgagee of record as of August 25, 2008.

On July 24, 2009, Aurora purported to assign the mortgage to MERS. See id. at 37-38. According to Nationstar, this assignment was invalid because MERS's assignment to Aurora on August 25, 2008 was invalid, leaving Aurora with no interest in the mortgage to assign. Thus, according to Nationstar, C&G remained the mortgagee of record.

On June 22, 2011, MERS purported to assign the mortgage to Aurora. See id. at 39-40. Again, Nationstar says this assignment was invalid because C&G, not Aurora, became the mortgagee of record on August 25, 2008. Thus, according to Nationstar, C&G remained the mortgagee of record.

On November 2, 2015, MERS purported to assign the mortgage to Nationstar. See id. at 61-62. According to Nationstar, this assignment was invalid because MERS already had assigned the mortgage to C&G on August 25, 2008; thus, MERS had no interest in the mortgage to assign. According to Nationstar, C&G remained, and is to this day, the mortgagee of record.

The upshot is as follows. Fannie Mae, through its agent Nationstar, possesses and controls Galvin's promissory note. Fannie Mae, through Nationstar, wants to obtain Galvin's corresponding mortgage from C&G, who Nationstar argues is the mortgagee of record. But Nationstar believes C&G is defunct and incapable of assigning the mortgage; so Nationstar filed this lawsuit seeking to establish that Nationstar, as Fannie Mae's agent, is the mortgage's rightful holder.

B.      Procedural History

On September 8, 2017, Nationstar filed a verified complaint asserting eight counts against Galvin. Docket #1. All counts except Counts I and II have been dismissed. See docket

6

#21. Counts I and II are claims to quiet title. Count I pertains to the quitclaim deed through which Galvin obtained the property from ReloAction. Namely, in Count I, Nationstar asks for a judgment declaring that Galvin is the property's "true and lawful owner in fee simple." Docket #1 ¶ 52. Nationstar advanced this claim because it believes that Edgar Colina's authority to sign the deed on ReloAction's behalf is unclear from the face of the deed. In Count II, Nationstar seeks a judgment declaring that it, as Fannie Mae's agent, is the true and lawful mortgagee of record of Galvin's mortgage. Id. ¶¶ 53-59.

On February 9, 2018, Nationstar filed the instant motion for summary judgment on Counts I and II. Docket #13; see also docket #14 (supporting memorandum of law with exhibits); docket #15 (supporting affidavit with exhibits). At the June 1 motion hearing, I gave Nationstar the opportunity to submit a further affidavit in support of summary judgment. Nationstar did so on June 13, 2018. See docket #18. Nationstar submitted additional supplemental exhibits on July 18, 2018. See docket #23.

II.   LAW

   A.   Subject-Matter Jurisdiction

The Constitution constrains the federal courts' subject-matter jurisdiction to "Cases" and "Controversies" only. U.S. Const. Art. III, § 2. "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)). A claim over which a federal court lacks subject-matter jurisdiction must be dismissed. See, e.g., White v. Gittens, 121 F.3d 803, 806 (1st Cir. 1997) (quoting In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988)) ("[I]t is too elementary

to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

Within the jurisdictional limitations of Article III lie the doctrines of standing and ripeness. First, in order to have standing, a plaintiff must allege, among other things, that he or she has suffered "'an invasion of a legally protected interest' that is . . . 'actual or imminent, not conjectural or hypothetical.'" Spokeo v. Robins, Inc., 136 S. Ct. 1540, 1548 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Second, "ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). "The basic inquiry is whether the conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (omission in original) (quotation and citations omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). Ripeness doctrine thus "is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Erwin Chemerinsky, Federal Jurisdiction § 2.4.1, at 117 (5th ed. 2007)).

B.      Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party properly supports its motion for summary judgment, the burden then shifts to the nonmovant, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  Moreover, the Court is "obliged to [ ]view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (citations omitted).  In so doing, the Court must "ignore conclusory allegations, improbable inferences, and unsupported speculation."  Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quotation omitted).

"If a party [seeking summary judgment] fails to properly support an assertion of fact . . . , the court may," among other things, "give an opportunity to properly support or address the fact," or "issue any other appropriate order."  Fed. R. Civ. P. 56(e)(1), (4).

III.    ANALYSIS

I address Nationstar's two remaining counts, Counts I and II, in turn.

A.      Count I

I find that Count I of Nationstar's complaint, which seeks to confirm the validity of Edgar Colina's signature on the quitclaim deed through which Galvin obtained the property from ReloAction, does not present a cognizable case or controversy and therefore falls outside the

Court's subject-matter jurisdiction. For this reason, I order that Count I be dismissed without prejudice.

At the June 1 motion hearing, I voiced my concern that Count I is nonjusticiable because the validity of Colina's signature has never been challenged. In response, Nationstar's counsel agreed that Count I does not present a cognizable case or controversy, and conceded that no one ever has disputed the adequacy of Colina's signature on the quitclaim deed. Nationstar's stated reason for pursuing Count I is that, according to Nationstar, some title insurance companies "tend to have problems" with deeds signed by someone whose relationship to the seller is not explicitly set forth in the deed—even when the signature in question clearly is adequate as a matter of law. At the motion hearing, Nationstar expressed concern that such an insurance company may, at some unspecified future time, attempt to argue that Colina's signature did not suffice to transfer the property to Galvin.

Nationstar's concern is mere speculation: it has offered no evidence that the adequacy of Colina's signature ever has been, or reasonably could be, placed into doubt.[4] The possibility that Colina's signature might one day face scrutiny does not inflict on Nationstar an injury that is "actual or imminent," as required for Nationstar to have standing, Spokeo, 136 S. Ct. at 1548 (quotation omitted), nor does it give rise to a dispute that is "definite and concrete, not hypothetical or abstract," as required for Count I to be ripe, Babbitt, 442 U.S. at 298 (quotation

---

[4] As noted above, the quitclaim deed was recorded simultaneously with a "Certificate of Secretary" from ReloAction that explicitly conveys to Colina authority to "contract to sell, sell, transfer, and convey" ReloAction's "real property," and states that a deed executed on ReloAction's behalf by Colina "shall be good, valid and effectual for all intents and purposes whatsoever as if the same had been signed, sealed, delivered, given, made or done by [ReloAction]." Docket #1-1 at 3-4; see docket #1 ¶¶ 14-15. Further, Nationstar's memorandum of law in support of summary judgment notes that under Massachusetts law, a challenge to Colina's signature must be raised within ten years of the date on which the deed was recorded in the Registry of Deeds—otherwise, the deed is deemed fully effective. See docket #14 at 4-5 (discussing Mass. Gen. Laws ch. 184, § 24). The quitclaim deed was recorded on October 4, 2002. See docket #1-1 at 1. According to Nationstar, because more than ten years have elapsed since that date, even if Colina's signature were somehow defective, that would not impact the deed's current validity. See docket #14 at 5.

and citations omitted). For these reasons, and based on Nationstar's concession that Count I does not present a cognizable case or controversy, I order that Count I be dismissed without prejudice, and I deny as moot Nationstar's motion for summary judgment on Count I.

B.     Count II

Nationstar also seeks summary judgment on Count II, through which it seeks to quiet title in Galvin's mortgage. According to Nationstar, its principal, Fannie Mae, holds Galvin's promissory note, and the current mortgagee of record of Galvin's mortgage is C&G. Under Massachusetts law, the holder of Galvin's promissory note has the right to obtain a court order directing the mortgagee of record to assign it Galvin's corresponding mortgage. See Eaton v. Fed'l Nat'l Mortg. Ass'n, 462 Mass. 569, 576-77 (2012) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 652 (2011)) ("[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment.'"). But Nationstar argues it is incapable of exercising that right in this case, because C&G allegedly is defunct and incapable of being haled into court. See docket #1 ¶¶ 54-58. On this basis, Nationstar asks the Court to issue a judgment in the instant case—to which C&G is not a party—declaring Nationstar the proper holder of Galvin's mortgage.

Seeking proof that C&G cannot, in fact, be served, the Court instructed Nationstar to submit documentation of its efforts to effect service on C&G. See docket #22. In response, Nationstar submitted an attorney's affidavit with exhibits. Docket #23. In substance, the affidavit states that shortly after filing this action, Nationstar mailed a copy of the verified complaint to a professional process server with instructions to serve C&G. Id. ¶ 7. In June and

11

July 2018, Nationstar repeatedly asked the process server whether the summons and complaint had been served; but despite its repeated inquiries, Nationstar has received no reply. Id. ¶¶ 9-12.

The Court also asked Nationstar to submit documentation showing that C&G's license to conduct business in California has been revoked. See docket #22. To date, Nationstar has submitted printouts from the Internet of C&G's listings in California, Massachusetts, and Indiana state databases. Docket #1-1 at 63-65; docket #23 at 12-15. As noted above, those listings state that C&G's status is "SOS/FTB SUSPENDED" in California, docket #1-1 at 63, its corporate registration in Massachusetts was involuntarily revoked, id. at 64, and it is inactive and in revoked status in Indiana, docket #23 at 12, 14.[5]

Nationstar's submissions do not suffice to establish that it has attempted to serve C&G, or that C&G is incapable of being served. To the contrary, the summary judgment record merely indicates that Nationstar's process server may or may not have attempted to effect service, and that C&G does not currently operate in certain states. It is far from clear that C&G, even if defunct, is incapable of receiving service of process. For example, California law provides that a dissolved corporation "shall survive and continue to exist indefinitely for the purpose of being sued in any quiet title action." Cal. Corp. Code § 2011(c). On this record, I find that Nationstar has failed to properly support its factual assertions respecting C&G. Cf. Fed. R. Civ. P. 56(e).

Absent persuasive evidence that C&G cannot be brought into this proceeding, the Court is unwilling to consider issuing an order adverse to and binding on C&G. Exercising the discretion afforded by Federal Rule of Civil Procedure 56(e), I will deny Nationstar's motion for summary judgment on Count II with leave to refile upon submission of sufficient proof that

---

[5] Nationstar's counsel also made an oral representation that Nationstar hired a company to try to locate someone capable of receiving service on C&G's behalf; but the summary judgment record contains no documentation supporting this representation.

Nationstar has attempted to effect service on C&G, and that C&G cannot be made party to this case.

## Conclusion

The Court ORDERS that Count I is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction. Plaintiff Nationstar's motion for summary judgment, docket #13, is DENIED AS MOOT as to Count I, and DENIED WITHOUT PREJUDICE as to Count II.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge