UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER,<br><br>    Plaintiff,<br><br>    v.<br><br>DANIEL GALVIN,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 4:17-cv-40123-DHH |

**ORDER**

May 2, 2019

Hennessy, M.J.

Plaintiff Nationstar Mortgage LLC ("Nationstar"), doing business as Mr. Cooper, filed this action to quiet title in and foreclose upon a parcel of real estate owned by pro se Defendant Daniel Galvin ("Galvin"). The parties have consented to my jurisdiction over all proceedings. Dkt. no. 10. Now before me is Nationstar's renewed motion for summary judgment on the only surviving count of its complaint. Dkt. no. 38. For the reasons that follow, the motion is GRANTED.

I.     FACTUAL BACKGROUND

Unless otherwise noted, the following facts in the summary judgment record are not in dispute.

    A.     The Note and Mortgage

In September 2002, Galvin acquired the property known as 12 Walden Court, Leominster, Massachusetts (the "Property") from ReloAction, a California corporation, by

means of a quitclaim deed. Dkt. no. 1 ("Complaint") ¶ 11; dkt. no. 1-1, at pp. 1-2 (copy of quitclaim deed). Galvin paid ReloAction $315,000 for the Property. Dkt. no. 1-1, at 1. To finance the purchase, Galvin obtained a loan in the amount of $283,500 from non-party C&G Financial Services, Inc. ("C&G"), a California corporation. Complaint ¶ 16. The loan was evidenced by a promissory note (the "Note") in favor of C&G and dated October 4, 2002. Id.; see also dkt. no. 1-1, at 6–9 (copy of Note); dkt. no. 41 (Plaintiff's Statement of Undisputed Material Facts, or "PSOF") ¶ 1. As security for the Note, Galvin executed a mortgage on the Property in the principal amount of $283,500 (the "Mortgage"). Complaint ¶ 22; dkt. no. 1-1, at pp. 10–22; PSOF ¶ 6. The Mortgage identifies C&G as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee, "acting solely as a nominee for [C&G] and [C&G's] successors and assigns." Complaint ¶ 22; dkt. no. 1-1, at p. 10; PSOF ¶ 6. The Mortgage was recorded in the Worcester Northern Registry of Deeds ("Registry of Deeds") on October 4, 2012, at Book 4356, Pages 80 et seq. Complaint ¶ 22; dkt. no. 1-1, at p. 10; PSOF ¶ 6. The two instruments at the center of this case are the Note and Mortgage. Both documents have been transferred several times over the years.

1. Note Transfers

First, C&G endorsed the Note to Lehman Brothers Bank, FSB ("Lehman Brothers Bank"). Complaint ¶ 17; dkt. no. 1-1, at p. 9; PSOF ¶ 2. Lehman Brothers Bank then endorsed the Note to Lehman Brothers Holdings Inc. ("Lehman Brothers Holdings"). Complaint ¶ 18; dkt. no. 1-1, at p. 9; PSOF ¶ 3. In turn, Lehman Brothers Holdings endorsed the Note in blank. See dkt. no. 1-1, at p. 9 ("Pay to the order of _____ without recourse."); see also Complaint ¶ 19; PSOF ¶ 4. Federal National Mortgage Association ("Fannie Mae") is the current owner and holder of the Note. Complaint ¶ 20; PSOF ¶ 5.

2. Assignments of Mortgage

The ownership history of the Mortgage is more complicated. The Mortgage is dated October 4, 2002. Complaint ¶ 22; dkt. no. 1-1, at p. 10; PSOF ¶ 6. As noted above, it names Galvin as the borrower, C&G as the lender, and MERS as the mortgagee. Complaint ¶ 22; dkt. no. 1-1, at p. 10; PSOF ¶ 6. The Mortgage has been the subject of numerous assignments, most of which, according to Nationstar, are invalid. I proceed chronologically.

On July 11, 2003, C&G executed an Assignment of Mortgage to Lehman Brothers Bank, which was recorded in the Registry of Deeds on August 13, 2003, in Book 4891, Pages 175 et seq. Complaint ¶ 23; dkt. no. 1-1, at pp. 23–24; PSOF ¶ 8.

On January 27, 2006, Lehman Brothers Bank executed an Assignment of Mortgage to MERS, which was recorded in the Registry of Deeds on February 8, 2006, in Book 6017, Pages 283 et seq. Complaint ¶ 25; dkt. no. 1-1, at pp. 25–26; PSOF ¶ 10.

On August 25, 2008, MERS executed an Assignment of Mortgage to C&G, which was recorded in the Registry of Deeds on September 25, 2008, in Book 6801, Pages 248 et seq. (the "First MERS Assignment"). Complaint ¶ 27; dkt. no. 1-1, at pp. 27–28; PSOF ¶ 12. The First MERS Assignment specifies an "effective date" of October 15, 2002. Complaint ¶ 28; dkt. no. 1-1, at p. 27.

That same day, MERS also executed an Assignment of Mortgage to Aurora Loan Services, LLC ("Aurora"), which was recorded in the Registry of Deeds on September 25, 2008, in Book 6801, Pages 250 et seq. (the "Second MERS Assignment"). Complaint ¶ 30; dkt. no. 1-1, at pp. 29–30; PSOF ¶ 13. The Second MERS Assignment was recorded immediately after the First MERS Assignment. See dkt. no. 1-1, at pp. 27–28 (containing First MERS Assignment

3

recorded in Book 6801 at Pages 248–49); id. at pp. 29–30 (containing Second MERS Assignment recorded in Book 6801 at Pages 250–51).

On July 24, 2009, Aurora executed an Assignment of Mortgage to MERS, which was recorded in the Registry of Deeds on August 5, 2009, in Book 7005, Pages 60 et seq. Complaint ¶ 33; dkt. no. 1-1, at pp. 37–38; PSOF ¶ 16.

On June 22, 2011, MERS executed an Assignment of Mortgage to Aurora, which was recorded in the Registry of Deeds on July 25, 2011, in Book 7444, Pages 193 et seq. (the "Third MERS Assignment"). Complaint ¶ 35; dkt. no. 1-1, at pp. 39–40; PSOF ¶ 18.

Finally, on November 2, 2015, MERS executed an Assignment of Mortgage to Nationstar, which was recorded in the Registry of Deeds on December 8, 2015, in Book 8462, Pages 152 et seq. (the "Fourth MERS Assignment"). Complaint ¶ 41; dkt. no. 1-1, at pp. 61–62; PSOF ¶ 22.

B.  Procedural Background

On September 8, 2017, Nationstar filed a verified complaint asserting eight counts against Galvin. Dkt. no. 1. All counts except Count II have been dismissed. See dkt. no. 21 (dismissing Counts III through VIII as moot); dkt. no. 24 (dismissing Count I without prejudice for lack of subject matter jurisdiction). In Count II, Nationstar seeks a judgment declaring Nationstar, as Fannie Mae's agent, the true and lawful mortgagee of record. Complaint ¶¶ 53–59.

On February 9, 2018, Nationstar filed its first motion for summary judgment on Count II.[1] Dkt. no. 13; see also dkt. no. 14 (supporting memorandum of law); dkt. no. 15 (supporting affidavit). Because Nationstar failed to establish that it attempted to serve C&G or that C&G

---

[1] The motion also sought summary judgment on Count I, which claim, as mentioned above, has since been dismissed.

was incapable of being served, the Court denied the motion with leave to refile upon submission of sufficient proof of an attempt to serve C&G and that C&G is incapable of being joined in this action. Dkt. no. 24, at pp. 12–13; see also dkt. nos. 28, 30, 33. On September 19, 2018, Nationstar served C&G through the Secretary of State for the Commonwealth of Massachusetts pursuant to Mass. Gen. Laws ch. 156D, § 15.10. Dkt. no. 34; see also FED. R. CIV. P. 4(h)(1)(B). C&G failed to answer or otherwise respond to the complaint. On November 13, 2018, Nationstar filed the instant motion. Dkt. no. 38; see also dkt. no. 39 (memorandum of law in support of motion); dkt. no. 40 (supporting affidavit); dkt. no. 41 (PSOF).

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Typically, the Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

But where the motion is unopposed, the "[m]aterial facts of record set forth . . . by the moving party . . . will be deemed for the purposes of the motion to be admitted." Murrell v. Petruzziello, No. 12-11727-FDS, 2013 WL 3786466, at *1 (D. Mass. July 17, 2013) (alteration and omissions in original) (quoting L.R. 56.1) (citing NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002)). "For that reason, '[i]n most cases, a party's failure to oppose summary

5

judgment is fatal to its case.'" Murrell, 2013 WL 3786466, at *2 (alteration in original) (quoting Pérez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531, 534 (1st Cir. 2006)). Indeed, when a party fails to oppose a motion for summary judgment, the requested relief, if appropriate, may be entered against the adverse party. FED. R. CIV. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."). Yet the failure to timely oppose a motion for summary judgment does not, alone, justify entry of summary judgment against the non-opposing party. Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991). In such circumstance, the Court shall "consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Id. (citing Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d 17, 19–20 (1st Cir. 1989)); see also Resolution Tr. Corp. v. Gold, 30 F.3d 251, 254 (1st Cir. 1994) (noting summary judgment, even if unopposed, is proper only if the record, viewed in the light most favorable to the non-moving party, reveals no trial-worthy issue of material fact and the movant is entitled to judgment as a matter of law).

III. ANALYSIS

Nationstar argues the current mortgagee of record, C&G, is defunct and incapable of assigning the Mortgage. As a result, Nationstar seeks summary judgment on Count II to quiet title in the Mortgage, effectively declaring that Nationstar, as Fannie Mae's agent, is the current holder of the Mortgage. This discussion proceeds in four parts. The first assesses the current ownership of the Note. The second considers Nationstar's standing and authority to obtain legal

6

title to the Mortgage. The third analyzes the purported Assignments of Mortgage and Nationstar's arguments respecting such transfers. Finally, the fourth addresses C&G's corporate status and ability to assign the Mortgage.

### A. Ownership of the Note

The effect of an endorsement in blank is that a note is enforceable by proof of possession alone. See MASS. GEN. LAWS ch. 106, § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); id. § 3-301 (stating that the party entitled to enforce an instrument means "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument" under other sections of the Code); see also Courtney v. U.S. Bank, N.A., 922 F. Supp. 2d 171, 174 (D. Mass. 2013) (citing MASS. GEN. LAWS ch. 106, § 3-301).

Because the Note is endorsed in blank, its holder is entitled to enforce it. Fannie Mae owns and possesses the Note. Complaint ¶ 20; PSOF ¶ 5. It follows that Fannie Mae is entitled to enforce it. See MASS. GEN. LAWS ch. 106, §§ 3-205(b), 3-301; Courtney, 922 F. Supp. 2d at 174.

### B. Nationstar's Authority to Obtain the Mortgage

Nationstar represents that it is an authorized agent of Fannie Mae and the Mortgage loan servicer, and is prosecuting this action on Fannie Mae's behalf. Complaint ¶ 21; PSOF ¶ 7.

The record contains a Limited Power of Attorney ("POA")[2] authorizing Nationstar to act for Fannie Mae for purposes including mortgage assignment and loan servicing. Dkt. no. 15-1, at p. 23 ¶¶ 6(e), 7, 8. The record also contains an affidavit of Erich Ludwig, a Fannie Mae employee whose title is listed as "AVP," which presumably means Assistant Vice President, averring that Nationstar is servicing the Mortgage on Fannie Mae's behalf, and "is duly authorized to commence and prosecute the instant action in its own name." Dkt. no. 18 ¶ 10. The affidavit further avers that Nationstar is authorized "to obtain an Assignment of the Galvin Mortgage and to hold the [M]ortgage, in its own name, in trust for Fannie Mae." Id. ¶ 11.

Under Massachusetts law, a party authorized by law to enforce a promissory note has the right to obtain a court order directing the mortgagee of record to assign the corresponding mortgage. See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1125 (Mass. 2012) ("[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment.'" (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 54 (Mass. 2011))). "This makes perfect sense: if the debtor-mortgagor defaults, the noteholder needs to control the mortgage in order to enforce its bargained-for security interest and collect the debt."

---

[2] Massachusetts law requires conveyances of real estate to be "recorded in the registry of deeds for the county or district in which the land to which it relates lies." MASS. GEN. LAWS ch. 183, § 4. This standard applies "to letters of attorney for the conveyance of real estate." MASS. GEN. LAWS ch. 183, § 32. Here, the POA included by Nationstar in the summary judgment record was recorded in the Worcester Registry of Deeds (i.e., not the Worcester Northern Registry of Deeds) on November 28, 2016, at Book 56365, Pages 376 et seq. Dkt. no. 15-1, at p. 22. The Property lies within the purview of the Worcester Northern Registry of Deeds. Nevertheless, an identical copy of the POA in this summary judgment record was recorded in the pertinent Registry of Deeds on June 1, 2016, at Book 8571, Pages 37 et seq. The Court takes judicial notice of this recording. FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); FED. R. EVID. 201(c)(1) (The court . . . may take judicial notice on its own[.]"); FED. R. EVID. 201(d) ("The court may take judicial notice at any stage of the proceeding."); see also Weiner v. Rushmore Loan Mgmt. Servs., LLC, 327 F. Supp. 3d 268, 273 (D. Mass. 2018) (Hillman, J.) (holding that improper reference to power of attorney recorded in unrelated registry does not invalidate the authority granted under a valid POA recorded in the appropriate registry).

Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013). Here, the noteholder, Fannie Mae, through its agent, Nationstar, has "the equitable right to demand and obtain the assignment of the [M]ortgage." Id. (citing Ibanez, 941 N.E.2d at 54). Nationstar, however, argues it cannot exercise that right because C&G is defunct and incapable of being haled into court. Dkt. no. 39, at pp. 6–7; dkt. no. 40 ¶¶ 33–37; PSOF ¶¶ 24–25, 33–36. If Nationstar is unable to obtain a written assignment from C&G, "Massachusetts law permits the [C]ourt to quiet title by equitably assigning the Mortgage to Nationstar, as Fannie Mae's agent, and declaring that Nationstar is the mortgagee of record." Nationstar Mortg. LLC v. Kilmer, 17-cv-30161-MGM, 2019 WL 458464, at *4 (D. Mass. Jan. 17, 2019), rep. & rec. adopted by 2019 WL 458383 (D. Mass. Feb. 5, 2019) (citing Ibanez, 941 N.E.2d at 54).

C. Assignment of Mortgage

A review of the law and various assignments of mortgage are necessary to determine whether C&G is the current mortgagee of record. Massachusetts General Laws ch. 183, § 54B governs the assignment of mortgages in Massachusetts and reads in relevant part:

> [An] assignment of mortgage[,] . . . if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, acting in its own capacity or as a general partner or co-venturer of the entity holding such mortgage, shall be binding upon such entity and shall be entitled to be recorded . . . .

MASS. GEN. LAWS ch. 183, § 54B (emphasis added). "In other words, to be valid and binding, an assignment [of mortgage] must be (1) executed before a notary public or person with similar authority to acknowledge such instruments; and (2) executed by a person 'purporting' to hold the

9

position of vice president or the like, with 'the entity holding such mortgage.'" Lopez v. Mortg. Elec. Registration Sys., Inc. (In re Lopez), 486 B.R. 221, 229 (Bankr. D. Mass. 2013) (quoting MASS. GEN. LAWS ch. 183, § 54B).

According to Nationstar, the July 11, 2003 assignment from C&G to Lehman Brothers Bank was never effective because only the mortgagee of record at the time, MERS, had authority to assign the Mortgage. The Court agrees. Where a mortgage names as lender one party, and as mortgagee another, the "lender[] cannot execute a valid assignment of [the mortgage] when it was not the named mortgagee." Stephens-Martin v. Bank of N.Y. Mellon Tr. Co., No. 12 MISC 465277-AHS, 2013 WL 5508415, at *5 (Mass. Land Ct. Oct. 1, 2013). MERS, as the named mortgagee, held legal title before, and continued to hold legal title after, the July 11, 2003 assignment was executed and recorded. This assignment was not executed by or on behalf of MERS, passed no legal title from MERS, and thus is ineffective.

Nationstar further argues that the January 27, 2006 assignment from Lehman Brothers Bank to MERS is invalid because Lehman Brothers Bank had no interest in the Mortgage to assign. As noted above, the C&G assignment to Lehman Brothers Bank was ineffective and passed no legal title. On January 27, 2006, MERS remained the mortgagee of record. Lehman Brothers Bank possessed no interest to assign, nor did it pass to MERS title to the Mortgage; MERS already possessed legal title. Accordingly, this assignment too was ineffective.

Nationstar next argues that the First MERS Assignment, dated August 25, 2008, assigned the Mortgage to C&G on August 25, 2008. While the First MERS Assignment specifies an "effective date" of October 15, 2002,[3] Nationstar argues that MERS' attempt to backdate the

---

[3] Presumably, MERS attempted to backdate the First MERS Assignment to cure the defects in the July 11, 2003 assignment from C&G to Lehman Brothers Bank and the January 27, 2006 assignment from Lehman Brothers Bank to MERS, which were invalid because C&G was not the mortgagee of record as of July 11, 2003.

10

First MERS Assignment, as a matter of law, is meaningless. The undersigned agrees. Under Massachusetts law, "the use of effective dates will not alter the fact that the transfer of mortgage assignment is only effective on the transfer." Fed. Nat'l Mortg. Ass'n v. Carr, 12-ADMS-10024, 2012 Mass. App. Div. 223, 2012 WL 6021306, at *3 (Mass. App. Div. Nov. 29, 2012). Indeed, "[b]ecause an assignment of mortgage is a transfer of legal title, it becomes effective . . . only on the transfer; it cannot become effective before the transfer." Ibanez, 941 N.E.2d at 54 (citing In re Schwartz, 366 B.R. 265, 269 (Bankr. D. Mass. 2007)); Carr, 2012 WL 6021306, at *3 ("A transfer of legal title in Massachusetts becomes effective only upon the transfer or execution date."). On August 25, 2008, MERS, then mortgagee of record, executed the First MERS Assignment. Legal title to the Mortgage therefore passed to C&G on that date.

On August 25, 2008, MERS also executed the Second MERS Assignment, which purported to transfer the Mortgage to Aurora. Nationstar argues that this assignment is ineffective: the First MERS Assignment assigned the Mortgage to C&G, after which MERS no longer held an interest in the Mortgage. The undersigned agrees. At the time the Second MERS Assignment was recorded, the Mortgage already had been assigned to C&G.[4] Accordingly, MERS did not hold an interest to assign to Aurora when it purported to do so.

C&G has not assigned any interest in the Mortgage since it became the mortgagee of record on August 25, 2008. Thus, the July 24, 2009 assignment from Aurora to MERS is ineffective because on July 24, 2009, the mortgagee of record was C&G. In other words, Aurora did not possess an interest in the Mortgage at the time, and therefore could not execute a valid assignment of the Mortgage to MERS. The same holds true for both the Third MERS

---

[4] The First MERS Assignment constituted a valid transfer of legal title from MERS to C&G and was recorded on September 25, 2008 in Registry of Deeds Book 6801, Pages 248 et seq. Dkt. no. 1-1, at p. 27. The Second MERS Assignment was recorded immediately after the First MERS Assignment, at Pages 250–51 in the same Book. Id. at 29.

11

Assignment (dated June 22, 2011 and purporting to assign the Mortgage to Aurora) and the Fourth MERS Assignment (dated November 2, 2015 and purporting to assign the Mortgage to Nationstar). MERS did not reacquire an interest in the Mortgage following the First MERS Assignment to C&G on August 25, 2008.

For the above reasons, C&G became, and has remained to this day, the mortgagee of record pursuant to the First MERS Assignment dated August 25, 2008. The other assignments of mortgage are ineffective as a matter of law.

D. Nationstar Cannot Obtain an Assignment from C&G

In August 2018, this Court denied Nationstar's first motion for summary judgment on Count II of the complaint because Nationstar's submission failed to establish that Nationstar attempted to serve C&G and that C&G is incapable of being served. Absent proof that C&G could not be brought into this proceeding, this Court was unwilling to issue an order adverse to and binding on C&G. Nationstar's renewed submission addresses these concerns.

California law provides that a dissolved corporation "shall survive and continue to exist indefinitely for the purpose of being sued in any quiet title action." CAL. CORP. CODE § 2011(c). The summary judgment record reveals that C&G is a defunct California corporation. See dkt. no. 40-1, at p. 50 (containing a Certificate of Status from the California Secretary of State stating C&G's powers, rights, and privileges pursuant to the California Corporations Code were suspended on July 30, 2009). Its registration to conduct business in Massachusetts was revoked on June 18, 2012. See id. at 53 (containing Business Entity Summary from the Corporations Division of the Massachusetts Secretary of State). Nationstar's attempts to contact C&G and obtain a direct assignment of mortgage have been fruitless. See dkt. no. 40 ¶¶ 33–37 (Affidavit of Brian C. Linehan, Esq.).

Under Massachusetts law, every foreign corporation is required to appoint a registered agent located within Massachusetts that is authorized to accept service on behalf of the corporation. MASS. GEN. LAWS ch. 156D, § 15.03. A foreign corporation that fails to satisfy this obligation "shall be deemed to have appointed the secretary of state . . . to be its true and lawful attorney upon whom all lawful process in any action or proceeding may be served . . . ." MASS. GEN. LAWS ch. 156D, § 15.10(b). Here, C&G has not appointed a registered agent within Massachusetts and thus is deemed to have appointed the Secretary of State as its true and lawful agent for service. Nationstar properly served process on C&G through the Secretary of State on September 19, 2018. Dkt. no. 40-1, at p. 56 (Proof of Service). C&G has failed to answer or otherwise respond to Nationstar's claims. The Court is satisfied with Nationstar's attempts to contact or otherwise join C&G in this action. Its submission provides requisite proof of C&G's involuntary dissolution and Nationstar's inability to obtain an assignment of mortgage from C&G.

For the reasons herein, Nationstar has demonstrated an absence of any disputed material fact and its entitlement to summary judgment as a matter of law. Nationstar is hereby deemed mortgagee of record of the Mortgage and shall be entitled to record this judgment as declaratory proof of such status. See Eaton, 969 N.E.2d at 1125 ("[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment.'" (quoting Ibanez, 941 N.E.2d at 54)).

## **Conclusion**

Plaintiff Nationstar's renewed motion for summary judgment (dkt. no. 38) is GRANTED.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge